UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

DIANE B. NASCA,

                        Plaintiff,

        -vs-                            **No. 1:15-CV-00805 (MAT)**
                                        **DECISION AND ORDER**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.

———————————————————————

## I.    Introduction

Represented by counsel, Diane B. Nasca ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion (doc. 10) is granted, and the matter is reversed and remanded solely for the calculation and payment of benefits as to the closed time period from February 13, 2014, through July 16, 2015.

## II.  Procedural History

The record reveals that in February 2014, plaintiff (d/o/b September 17, 1958) applied for DIB and SSI, alleging disability as of February 13, 2014. After her applications were denied, plaintiff

requested a hearing, which was held before administrative law judge Timothy M. McGuan ("the ALJ") on June 24, 2015. The ALJ issued an unfavorable decision on July 16, 2015. The Appeals Council denied review and this timely action followed.

As plaintiff points out in a supplemental motion to remand for consideration of new evidence (see doc. 15), she filed a second DIB/SSI application alleging disability as of August 28, 2015. On October 4, 2016, ALJ Stanley A. Moskal, Jr. issued a fully favorable determination finding that as of August 28, 2015, plaintiff was disabled, as a matter of law, pursuant to Listing 12.04. See 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04 (defining affective disorders).

## III. Summary of the Record

### A. Medical Records

Although plaintiff alleged physical impairments, none were found severe by the ALJ and plaintiff does not challenge that determination. Therefore, this summary focuses on plaintiff's mental health impairments. The record reveals that plaintiff treated for mental health conditions at Recovery Plus, a program associated with the New York State Office of Mental Health, beginning in May 2011. In October 2013, plaintiff began treatment with psychiatrist Dr. Olga Cruz-Barrios. Plaintiff treated at Recovery Plus through the date of the ALJ's decision, with

Dr. Barrios, psychologist Dr. Sarah Newman, and licensed mental health counselor ("LMHC") Michelle Bauman.

On October 16, 2013, Dr. Barrios noted plaintiff's complaints of depression characterized by lack of energy and motivation, for which she had been prescribed Lexapro (an antidepressant) for six years from her primary care physician. Plaintiff also reported a history of anorexia and an "addiction" to plastic surgery, describing multiple past surgeries. T. 375. Dr. Barrios diagnosed plaintiff with mood disorder not otherwise specified ("NOS"), hypochondriasis/body dysmorphic disorder, and personality disorder NOS. On mental status examination ("MSE"), plaintiff presented as pleasant and cooperative, with a sad affect, "easily suspicious but not delusional" thought processes, "preoccupations about the things she [had] done wrong," and statements that she desired further plastic surgery. T. 377. Dr. Barrios assessed a GAF of 50[1] and noted a guarded progonosis.

In January 2014, LMHC Bauman noted that plaintiff reported not trusting coworkers "as 'they [were] back stabbers.'" T. 379. In February 2014, plaintiff reported that she had been fired from work. LMHC Bauman recorded plaintiff's statement:

---

[1]   See generally American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. rev. 2000) (describing global assessment of functioning ("GAF") scoring). A GAF of 50 indicates serious symptoms, such as suicidal ideation, severe obsessional rituals, frequent shoplifting, or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). Id.

> I went to SSD [and] applied for that because I just can't work anymore. Work gives me an enormous amount of stress it's hard for me to cope. When I feel overwhelmed I don't want to do anything and I actually can't, I have no energy or motivation. So when I feel that way I am late or I just call off work. When I received the termination letter I felt sad, alone, worthless, and hated.

T. 382. On March 5, 2014, plaintiff reported feeling "more hopeful and less depressed," and expressed an interest in returning to work. However, by late March 2014, plaintiff reported that she had not been sleeping well and that her "symptoms [of] depression, anxiety and panic [had] increased," and asked that an appointment with Dr. Barrios be moved up. T. 392.

On April 2, 2014, plaintiff met with Dr. Barrios, who continued plaintiff's Lexapro prescription and added hydroxyzine as a sleep aid. Plaintiff reported looking for a job but Dr. Barrios noted that she was "not excited about getting a job as she [did not] want to work around people." T. 390. Subsequent treatment notes from LMHC Bauman indicate that plaintiff intermittently reported feeling less depressive symptoms, but her mood would often return to feelings of depression and anxiety. On May 14, 2014, while talking about her DIB and SSI applications, plaintiff "broke out in hives related to the thought of having to go and speak with someone new about why she can't work." T. 400.

Plaintiff repeatedly reported feeling overwhelmed with the disability application process and with the prospect of managing her money. On July 30, 2014, plaintiff was tearful and "expressed

sentiment to the effect if her life goes on like this she has nothing to really live for anymore"; she also reported that "she was short of food at the month's end and [had] not eaten." T. 436. LMHC Bauman referred plaintiff to a food pantry. Through the time of the ALJ's decision, plaintiff continued to report symptoms of depression, anxiety, and sleep disturbance, and she often was late for appointments or failed to appear at all. Dr, Barrios managed plaintiff's medications continuously throughout the relevant time period.

**B.    Medical Opinions**

On May 28, 2014, psychologist Dr. Susan Santarpia completed a consulting psychiatric evaluation at the request of the state agency. On MSE, Dr. Santarpia noted that plaintiff "could not do simple one-step or two-step mathematical calculations," opining that this deficiency was "due to lack of effort." T. 402. Plaintiff's cognitive functioning was "[e]stimated to be in the low average range of ability." T. 403. Dr. Santarpia opined that plaintiff was "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, [and] appropriately deal[] with stress within normal limits." Id. Dr. Santarpia opined that a "[m]ild to moderate impairment [was] demonstrated in performing simple tasks independently, making appropriate decisions, and relating

5

adequately with others." Id. Finally, Dr. Santarpia opined that plaintiff's difficulties were "caused by lack of motivation." Id.

Dr. Barrios and LMHC Bauman issued a joint "mental impairment questionnaire" on July 23, 2014. The questionnaire indicated that plaintiff had treated at Recovery Plus since April 2011, two to four times per month for psychotherapy, medication evaluation, and follow-up. In handwritten commentary, LMHC Bauman stated that "[w]hen employed [plaintiff's] anxiety, depression, and panic were increased." T. 408. Dr. Barrios and LMHC Bauman checked boxes indicating that plaintiff experienced, among other signs and symptoms, anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and sleep disturbance. According to Dr. Barrios and LMHC Bauman, plaintiff's impairments resulted in moderate restrictions in activities of daily living; marked difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and one or two episodes of decompensation within a 12 month period, each of at least two weeks duration.

Dr. Barrios and LMHC Bauman opined that plaintiff's condition would cause her to miss about four days per month of work, and that she suffered from a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental

demands or change in the environment would be predicted to cause [her] to decompensate." T. 412. In handwritten commentary, LMHC Bauman stated that plaintiff had "trouble with memory and recall" and was "easily overwhelmed." T. 411. "When employed, [she] was paranoid about the staff and coworkers, i.e., believing they were out to get her. She was unable to sleep, mood was disturbed, [and] sleep impaired." Id. Since she began treatment in April 2011, she had been "unable to make any appointments on time." T. 413.

In June 2015, Dr. Sarah Newman, a psychologist who had treated plaintiff at Recovery Plus since January 2015, completed a mental impairment questionnaire in which she indicated much of the same concerns noted by Dr. Barrios and LMHC Bauman. Dr. Newman noted, in handwritten commentary, that plaintiff was "generally able to maintain some part-time employment in an unskilled position," but "anything greater increase[d] her anxiety, depression, [and] panic. In order to maintain symptom reduction [and] quality of life, anything greater is not recommended." T. 418. Dr. Newman also indicated that plaintiff suffered from anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and sleep disturbance; which resulted in marked difficulties maintaining social functioning and maintaining concentration, persistence, or pace; and one or two prior episodes of decompensation.

On August 17, 2015, one day after the ALJ's decision, Dr. Newman wrote a letter[2] indicating disagreement with the ALJ's decision. According to Dr. Newman, plaintiff's "mood fluctuate[d] regularly and she [was] generally dysphoric." Doc. 10-2 at 2. Dr. Newman opined that plaintiff's "general disposition and inabilities to cope with everyday social situations and stressors [were] present during all therapy sessions and psychiatric evaluations; these symptoms significantly impact[ed] her ability to function in a full-time position." Id.

## IV. The ALJ's Decision

Initially, the ALJ determined that plaintiff met the insured status requirements of the Act through March 31, 2015. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 13, 2014, the alleged onset date. At step two, the ALJ found that plaintiff suffered from mood disorder and personality disorder, impairments which he considered severe. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

---

[2] Plaintiff's brief states that this letter was provided to the Appeals Council, but it was not made a part of the administrative record upon the Council's review.

perform a full range of work at all exertional levels but with the following non-exertional limitations: she could "frequently interact with others and frequently understand, remember, and carry out complex and detailed tasks." T. 15. At step four, the ALJ determined that plaintiff was capable of performing past relevant work as a home health aide. Accordingly, the ALJ did not proceed to step five, and found that plaintiff was not disabled.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Plaintiff argues that the ALJ failed to properly apply the treating physician rule to the opinion of plaintiff's primary treating psychiatrist, Dr. Ronald Spurling. The Court agrees, and because this issue is found to be dispositive, the Court will not address plaintiff's remaining arguments.

### A.   Weight Given to Medical Opinions

Plaintiff contends that the ALJ failed to properly weigh the opinions of her treating psychological sources as well as the

consulting opinion of Dr. Santarpia. The ALJ gave Dr. Santarpia's opinion "great" weight. As discussed above, Dr. Santarpia opined that plaintiff had mild to moderate limitations "in performing simple tasks independently, making appropriate decisions, and relating adequately with others." T. 403.  The ALJ reasoned that, since Dr. Santarpia had previously found plaintiff could perform simple tasks without restriction, she had made a clerical error in assigning mild to moderate limitations in *simple* tasks; according to the ALJ, he "assume[d] that the limitations . . . should refer to *complex and detailed* tasks." T. 18 (emphasis added). The Court accepts, for purposes of this discussion, that Dr. Santarpia indeed meant to assign mild to moderate limitations in plaintiff's ability to perform complex, not simple, tasks.

Nevertheless, the ALJ erred in giving great weight to Dr. Santarpia's opinion while giving "limited weight" to the medical source statements from plaintiff's three treating psychiatric sources – Dr. Barrios, LMHC Bauman, and Dr. Newman. The treating physician rule "recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." <u>Santiago v. Barnhart</u>, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006) (citing <u>Schisler v. Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993) (noting that regulations give deference to treating physicians' opinions because "opinions

based on a patient-physician relationship are more reliable than opinions based . . . solely on an examination for purposes of the disability proceedings themselves")). As the Santiago court recognized, the treating physician rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." 441 F. Supp. 2d at 629. Here, the ALJ erred in accepting the consulting psychologist's opinion over the highly detailed, longitudinal opinions of three of plaintiff's treating sources.

Because the ALJ elected not to give any of the treating opinions controlling weight, he was required to consider several factors in determining how much weight the opinions should receive. Those factors include the frequency of examination and the length and nature of the treating doctor's relationship with the patient, the extent to which medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of his opinion with the rest of the medical record, and any other factors which tend to support or contradict the treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ here did not explicitly consider these factors, reasoning instead that:

> Much of what Drs. Barrios and Newman checked for signs
> and symptoms are just not found in the records from

Recovery Plus. For example, the sources checked
seclusiveness and autistic thinking, memory impairment
and difficulty thinking and concentrating. None of this
is shown in any objective examination. They also check
she has impulsive and damaging behavior, but nothing
except her own complaint, if any, to support such
conclusions. Finally, the sources indicate 1-2 episodes
of decompensation lasting two weeks. This is simply not
true or found in any records.

T. 18.

Plaintiff contends that the ALJ failed to give "good reasons"
for rejecting the treating source opinions, and the Court agrees.
It is apparent from the ALJ's statement of reasons that he did not
give due consideration to the factors referenced in the
regulations, see 20 C.F.R. §§ 404.1527(d), 416.927(d), but that he
instead "pick[ed] and [chose] only evidence from the same sources
that supports a particular conclusion." Ebelink v. Colvin, 2015 WL
9581787, *6 (W.D.N.Y. Dec. 30, 2015) (quoting Royal v. Astrue, 2012
WL 5449610, *6 (N.D.N.Y. Oct. 2, 2012)). Moreover, even the
consulting examiner's findings arguably supported a finding that
plaintiff had difficulty thinking and concentrating, despite
Dr. Santarpia's ultimate conclusion that these deficits were "due
to lack of effort." T. 402.[3] Plaintiff's treatment notes are
replete with references to her sad affect, depressed mood,
intermittent tearfulness, lack of energy, sleep disturbances, and

---

[3] The Court notes that in October 2013, Dr. Barrios noted plaintiff's
history of compulsive hair pulling and scratching at her scalp, although
plaintiff did not demonstrate those behaviors in that particular session.
However, this evidence belies the ALJ's conclusion that the record failed to
support Drs. Barrios' and Newman's assessments that plaintiff suffered from
impulsive and damaging behavior.

general difficulty handling the everyday stresses of a full-time job.

The ALJ's reasoning lacked any reference to the frequency of examination and the length and nature of the treating sources' relationships with plaintiff, the extent to which medical evidence supported the opinions, whether the sources were specialists, and the consistency of the opinions with the rest of the medical record. Indeed, a reading of the ALJ's reasoning reveals that rather than take these factors into consideration as he was required to under the regulations, the ALJ instead ignored them. All of the factors weigh in favor of giving more, not less, weight to the opinions of Drs. Barrios and Newman, each of whom had treated plaintiff for a significant period of time and each of whom specialized in psychiatry or psychology. Moreover, treatment records from Recovery Plus are consistent with the opinions, in that they repeatedly reference plaintiff's issues with weight control, loss of interest in daily activities, sleep disturbance, decreased energy, depressed affect, feelings of guilt and worthlessness, and difficulty concentrating or thinking especially when overwhelmed by work stressors.

In short, the ALJ was not entitled to give the treating sources' opinions less than controlling weight without providing good reasons sufficient to satisfy the regulations. Coluciello-Pitkouvich v. Astrue, 2014 WL 4954664, *6 (E.D.N.Y.

Sept. 30, 2014) ("[T]he ALJ must expressly state the weight assigned and provide 'good reasons' for why the particular weight was assigned to each treating source's opinion.") (citing 20 C.F.R. § 404.1527(c)(2)). Moreover, because the treating source opinions were supported by plaintiff's well-documented record of treatment and were not inconsistent with other substantial evidence in the record, the ALJ should have given the opinions controlling weight under the treating physician rule. See, e.g., Bogdan v. Colvin, 2016 WL 1398986, *4 (W.D.N.Y. Apr. 11, 2016) (reversing and remanding for calculation of benefits where treating psychiatrist's opinion established plaintiff's disability as a matter of law).

Given the controlling weight to which they were entitled, the opinions of Drs. Barrios and Newman establish that plaintiff met Listing 12.04, which defines affective disorders, for the closed time period from her alleged onset date, February 13, 2014, through the date of the ALJ's decision, July 16, 2015. See 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04. That listing, as relevant here, requires that plaintiff demonstrate (A) at least four particular symptoms of depressive syndrome (plaintiff in this case demonstrated at least six: anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking); and (B) these symptoms must result in at least two markedly limited areas of functioning (plaintiff in this case, according to both

14

Drs. Barrios and Newman, was markedly restricted in maintaining social functioning and in maintaining concentration, persistence, or pace).

The conclusion that plaintiff's condition meets Listing 12.04 is consistent with plaintiff's later disability determination, decided by ALJ Moskal, which found that plaintiff met Listing 12.04 for the time period beginning August 28, 2015. See Doc. 15-3 at 9-12. As plaintiff points out, ALJ Moskal's decision considered the opinions at issue in this case and gave them some weight in informing his decision that plaintiff met Listing 12.04 for the later time period.

The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). That standard has been met in this case. Because additional proceedings would serve no purpose and would lead to further delay of plaintiff's claim, remand solely for the calculation and payment of benefits is warranted. See McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against

a remand for further proceedings where the record contains substantial evidence of disability"). Because the Court finds remand necessary on the above-discussed basis, it is unnecessary to consider plaintiff's remaining arguments. Accordingly, her supplemental motion seeking remand based on new evidence is denied as moot.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 12) is denied and plaintiff's motion (Doc. 10) is granted. Plaintiff's supplemental motion to remand for consideration of new evidence (doc. 15) is denied as moot. This matter is reversed and remanded solely for the calculation and payment of benefits as to the closed time period from February 13, 2014, through July 16, 2015. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    October 27, 2016
          Rochester, New York.

16